IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LEE A. NUGARA,                )                  4:09CV3212
                              )
          Plaintiff,       )
                              )        MEMORANDUM
      v.                   )        AND ORDER
                              )
NEBRASKA ASSOCIATION OF    )
PUBLIC EMPLOYEES and       )
AMERICAN FEDERATION OF     )
STATE, COUNTY AND           )
MUNICIPAL EMPLOYEES,      )
                              )
         Defendants.     )
_____)

The plaintiff, Lee A. Nugara ("Nugara"), claims that the defendants, Nebraska Association of Public Employees ("NAPE") and American Federation of State, County and Municipal Employees ("AFSCME"), violated his rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., by terminating his employment on October 2, 2008. He also claims that the defendants breached a settlement agreement from a prior lawsuit in which they agreed that the defendant could only be terminated for just cause.

NAPE has moved for summary judgment on the ADEA and ADA claims, contending that it is not subject to either Act because it does not have the requisite minimum number of employees; NAPE admits that it is affiliated with AFSCME but denies that the defendants constitute a single "employer" for purposes of the Acts.

NAPE also requests that the court decline to exercise supplemental jurisdiction over the state-law breach-of-contract claim upon dismissal of the federal claims.

AFSCME has moved to dismiss the claims against it for Nugara's failure to obtain timely service and failure to state a claim upon which relief can be granted. In the alternative, AFSCME has moved for summary judgment on all claims. AFSCME denies that it was Nugara's employer.

For the reasons discussed below, I will (1) deny in part and grant in part AFSCME's motion to dismiss, (2) grant NAPE's motion for partial summary judgment, (3) grant in part AFSCME's alternative motion for summary judgment, and (4) dismiss Nugara's state-law claim without prejudice.

## 1.  AFSCME's Motion to Dismiss

### A.  Untimely Service of Summons.

Nugara's complaint was filed in this court on October 13, 2009.  (Filing 1.) NAPE and AFSCME were each sent a summons and a copy of the complaint on November 4, 2009, by separate certified mailings addressed to the same location in Lincoln, Nebraska; the same person signed the receipts for both deliveries.  (Filing 12.)  NAPE filed an answer on November 23, 2009. (Filing 13.)

In a Rule 26(f) planning conference report filed on March 30, 2010, NAPE indicated that it would contest subject matter jurisdiction and it was proposed that limited discovery be conducted; Nugara indicated that "[i]f necessary, [he] may file the necessary motions to perfect service upon defendant American Federation of State, County and Municipal Employees."  (Filing 20.)  The court approved the limited discovery proposal and established a deadline of August 2, 2010, for NAPE to file a motion challenging subject matter jurisdiction.  (Filing 22.)

On August 24, 2010, there having been no jurisdictional challenge filed, the court directed the parties to file an amended Rule 26(f) planning conference report. (Filing 26.)  In an amended report filed on September 7, 2010, the court was advised that "[t]he plaintiff will serve the American Federation of State, County and Municipal Employees, defendant, on or before September 17, 2010."  (Filing 27.)

Nugara filed a request for issuance of summons on September 16, 2010, but the request was terminated by the clerk of the court because it appeared from the docket sheet that AFSCME had already been served.  (Filing 29.)  Nugara thereafter filed a motion for the issuance of a summons directed to AFSCME, which was granted by the court on November 23, 2010.[1]  (Filings 32, 34.)  AFSCME was served on November 30, 2010, by a certified mailing sent to an address in Washington, D.C. (Filing 44.)

AFSCME was granted an extension of time, until January 20, 2011, to file an answer or dispositive motion.  (Filings 40, 41.)   No answer or motion was filed by that date, but as the result of a telephone conference with the parties on December 29, 2010, Magistrate Judge Cheryl R. Zwart established a deadline of February 11, 2011, for AFSCME to respond to the complaint and for both defendants to file motions to dismiss or motions for summary judgment.  (Filing 46.)  The pending motions were filed on February 11, 2011.  (Filings 47, 48.)

Under the Federal Rules of Civil Procedure, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) ...." Fed.R.Civ.P. 4(c)(1).  Rule 4(m) provides in relevant part,

---

[1] AFSCME has moved for reconsideration of this order pursuant to former Nebraska Civil Rule 60.1 (repealed effective October 22, 2010), but the order did not address the issue of whether service of a second summons more than 120 days after filing of the complaint would be effective.  Reconsideration of the order is denied.

If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on it own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

"Thus, under Rule 4(m), if the district court concludes there is good cause for plaintiff's failure to serve within 120 days, it *shall* extend the time for service. If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case without prejudice." *Kurka v. Iowa County*, 628 F.3d 953, 957 (8th Cir. 2010) (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)) (emphasis in original). "To warrant a discretionary extension, the plaintiff must establish excusable neglect." *Id.* (citing *Colasante v. Wells Fargo Corp.*, 81 Fed.Appx. 611, 613 (8th Cir. 2003) (per curiam) (unpublished)).

Rule 4(m) does not define good cause, and courts have not given conclusive meaning to the phrase. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (3d ed.2002); *see also Colasante*, 81 Fed.Appx. at 613 ("There is no comprehensive definition of what constitutes good cause sufficient to warrant a mandatory extension under Rule 4(m)."). "A showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Adams*, 74 F.3d at 887. "[G]ood cause is likely (but not always) to be found when [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or [4] the plaintiff is proceeding pro se or in forma pauperis." Wright & Miller § 1137, *supra* at 342.

-4-

> At its core, however, the standard of good cause, like many others in the law, is necessarily amorphous. Whether or not it has been satisfied is largely dependent upon the facts of each individual case. It is for this very reason that such a determination is entrusted to the sound and considerable discretion of the district court in the first instance.

*Colasante*, 81 Fed.Appx. at 613.

*Id.*

Nugara has not made a "good cause" showing in response to AFSCME's motion to dismiss, nor does he contend that the first summons issued for service on AFSCME was properly served.  He simply argues that "the questions [sic] now becomes if the defendants constitute one employer and one of them is served then aren't both served[?]  The Plaintiff's position is that they are both served."  (Filing 63 at 4.)  He is mistaken.  Regardless of whether NAPE and AFSCME constituted a single employer for purposes of the ADEA or the ADA, Nugara was obligated to serve each named defendant.  The action against AFSCME must be dismissed without prejudice unless Nugara's failure to obtain service upon AFSCME within 120 days after filing the complaint was the result of excusable neglect.

> [E]xcusable neglect [is] as "an 'elastic concept' that empowers courts to" provide relief where a party's failure to meet a deadline is "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (reviewing excusable neglect under Fed.R.Civ.P. 6(b)) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.*

-5-

In determining whether neglect is excusable, the following factors are particularly important: (1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 395, 113 S.Ct. 1489; *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir.2007) (citation omitted). These factors do not bear equal weight as the reason for delay is generally a key factor in the analysis. *See In re Guidant Corp.*, 496 F.3d at 867.

Because the judicial preference for adjudication on the merits, which goes to the fundamental fairness of the adjudicatory process, is implicated here, the district court must weigh the effect on the party requesting the extension against the prejudice to the defendant. *See Chorosevic*, 600 F.3d at 947 (finding the denial of a motion to file out of time would have imposed on the appellees a severe penalty unmatched by any prejudice to the appellant). "However, 'the running of the statute of limitations does not require the district court to extend time for service of process.'" *Adams*, 74 F.3d at 887 (quoting *Petrucelli*, 46 F.3d at 1306); *see also Colasante*, 81 Fed.Appx. at 613 (holding the district court did not abuse its discretion in finding no good cause or excusable neglect in the plaintiff's "inattention to procedural rules," even though dismissal without prejudice effectively barred plaintiff's claim).

*Id.* at 959.

AFSCME has not demonstrated that it has been prejudiced by the late service of summons.  Although the length of the delay was considerable, it does not appear that the progress of the case has been adversely impacted, or at least not to a significant extent.  With the exception of the clerk's termination of Nugara's request for the issuance of a second summons for service on AFSCME, the reason for the delay was Nugara's attempt to serve AFSCME at NAPE's address.  AFSCME has presented evidence that its attorney discussed this improper service with Nugara's

-6-

attorney on November 16, 2009, and provided him with the correct address for obtaining service on AFSCME.  Nugara's attorney did not act on this information until 10 months later, but I do not find that either the initial attempt at service or the delay in requesting the issuance of a second summons was motivated by bad faith. Weighing these factors, and considering the equities of the situation, I conclude that the delay should be excused.  AFSCME's motion to dismiss the action against it pursuant to Rule 4(m) therefore will be denied.[2]

### B. Failure to State a Claim.

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

AFSCME argues that it cannot be held liable for the alleged discrimination in employment because Nugara has specifically pleaded that he "was employed by NAPE." (Complaint (filing 1), ¶ 5.) While he also alleges that NAPE "is a subsidiary of defendant American Federation of State, County and Municipal Employees" (*id.*, ¶ 3), Nugara does not set forth any facts to show that AFSCME was his employer.

---

[2] AFSCME's motion requests dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5), for insufficient service of process, but I will treat the motion as having been filed pursuant to Rule 4(m).  Apart from the failure to obtain service within 120 days after filing the complaint, it appears that the second summons was properly served upon AFSCME.

-7-

In the Eighth Circuit, there is a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances. *Brown v. Fred's, Inc.*, 494 F.3d 736, 739 (8th Cir.2007).  However, "[i]n civil rights actions, 'superficially distinct enterprises may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.'" *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir.1997) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)).To determine whether a parent corporation and its subsidiary may be regarded as a "single employer" in civil rights cases, the Eighth Circuit Court of Appeals has adopted the four-part analysis originally promulgated by the National Labor Relations Board: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations; and (4) common ownership or financial control. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977).

"A parent company may only be the employer of its subsidiary's employees if: (1) 'the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer,' or (2) 'the parent company is linked to the alleged discriminatory action because it controls 'individual employment decisions.'" *Brown*, 494 F.3d at 739 (quoting *Johnson v. Flowers Indus. Inc .*, 814 F.2d 978, 981 (4th Cir.1987) and *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268 (8th Cir.1987)). To be an employer, the parent company must exercise a degree of control that exceeds the control normally exercised by a parent corporation. *Brown*, 494 F.3d at 739.

*Schrader v. Henningsen Foods, Inc.*, No. 8:09CV33, 2009 WL 4043553, *3 (D.Neb. Nov. 20, 2009).

The "employer" status of a defendant is an essential element of any claim brought under the ADEA or the ADA.  *See Palmer v. Arkansas Council on Economic Educ.*, 154 F.3d 892, 895 (8th Cir. 1998) (for ADEA liability to be imposed, "there must be an employment relationship between the plaintiff and the defendant.");

-8-

*Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (no liability under ADA against persons who do not qualify as "employers" as defined in statute). Because Nugara has not alleged that AFSCME was his employer, nor set forth any facts in the complaint to indicate that AFSCME dominated NAPE's operations or controlled employment decisions, he has failed to state a claim upon which relief can be granted against AFSCME under the ADEA and the ADA. As a result, AFSCME's Rule 12(b)(6) motion will be granted with respect to Nugara's federal-law age and disability discrimination claims.

AFSCME has also moved to dismiss the state-law claim for breach of contract, arguing that the particular provision of the settlement agreement that the defendants allegedly breached applies only to NAPE. I do not reach this issue because I find that the federal-law claims against NAPE should also be dismissed and conclude that I should decline to exercise supplemental jurisdiction over the state-law claim.

### 2. NAPE's Motion for Partial Summary Judgment

The ADEA defines the term "employer" as "a person engaged in an industry affecting commerce who has *twenty or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...." 29 U.S.C. § 630(b) (emphasis supplied). Similarly, under the ADA the term "employer" means "a person engaged in an industry affecting commerce who has *15 or more employees* for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, ...." 42 U.S.C. § 12111(5)(A) (emphasis supplied). These employee-numerosity requirements "are an element of a plaintiff's claim for relief, ...." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (construing comparable provision in Title VII as being a non-jurisdictional requirement).

The evidence establishes that at all times relevant to the pending action, NAPE had 6 employees or less. (Affidavit of Julie Dake Abel, Executive Director of NAPE

(hereinafter "Abel Aff.") (filing 49), ¶¶ 18-19.) Nugara's federal-law claims therefore fail unless he can prove that NAPE and AFSCME effectively constituted a single "employer" as defined in the ADEA and the ADA.

Separate entities may be consolidated to meet statutory employee-numerosity requirements based on four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Baker*, 560 F.2d at 392. Examining the pleadings and evidence filed by the parties, I find there is no genuine issue of material fact and determine as a matter of law, based upon consideration of each of the foregoing factors, that Nugara was employed solely by NAPE. NAPE's motion for partial summary judgment therefore will be granted.[3]

Nugara states that he "was employed by NAPE as an Organizer and Contract Administrator/ Lead Negotiator from May 7, 1997 until September 2, 2008, when he was informed that his position was being terminated due to budgetary reasons."

---

[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). The moving party bears the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)) (internal marks omitted).

(Complaint, ¶ 5.) In a charge of discrimination filed jointly with the Nebraska Equal Opportunity Commission and the EEOC, Nugara alleged that "[o]n 9/2/08, I was placed on administrative leave and given written notification from [NAPE's former] Executive Director Mike Marvin that I was being laid off effective 10/2/08 due to reduction in workforce. . . . [Marvin's] 9/2/08 letter stated that I was being laid off rather than two Contract Administrator/Lead Negotiators (Julie Dake Abel, age 32, Ted Buri, older than me) with less seniority than me because he claimed I had not demonstrated the skills of the Contract Administrator/Lead Negotiator and was not qualified to displace a Contract Administrator."  (Complaint, Exhibit A.)

### A.  Uncontroverted Facts

NAPE is a non-profit corporation, chartered under the laws of the State of Nebraska.  (Abel Aff., ¶ 2.)  NAPE's principal place of business is located in Lincoln, Nebraska.  (Complaint, ¶ 3.)

At all times relevant to the pending action, NAPE's Articles of Incorporation and By-Laws have constituted the basic governing structure of NAPE, and it has had a Board of Directors and also an Executive Board, which is comprised of the elected officers of the Board of Directors. (Abel Aff., ¶¶ 4-5.)  The Board of Directors and Executive Board members have received no compensation from NAPE for their service to NAPE, no contributions have been made by NAPE on their behalf to any retirement or pension fund, and Board members do not receive W-2 forms from NAPE. (*Id.*, ¶ 6.)  Following their attendance at Board meetings and the submission of an expense report to NAPE, the Board of Directors and Executive Board members have received reimbursement for reasonable travel related expenses (gasoline and meals) relating to their attendance at Board meetings. (*Id.*, ¶ 7.)

At all times relevant to the pending action, NAPE also has had uncompensated Union Stewards; the Stewards have received no compensation from NAPE for their

service to NAPE and their fellow bargaining unit members; no contributions have been made by NAPE on their behalf to any retirement or pension fund, the Stewards do not receive W-2 forms from NAPE but are reimbursed for reasonable out-of-pocket expenses. (*Id.*, ¶ 8.) NAPE is the exclusive collective bargaining agent for State employees and is party to a collective bargaining agreement with the State of Nebraska. This collective bargaining agreement contains specific language providing compensation by the State for Stewards who are State employees for up to 12 hours each month. NAPE does not pay its Stewards for "lost" time; specifically any time over 12 hours a month that the Stewards spends in a non-pay status performing Steward functions. (*Id.*, ¶ 10.)

NAPE has been affiliated with AFSCME, since July 14, 1987. (*Id.*, ¶ 11.) Prior to its affiliation with AFSCME, NAPE was an "independent" labor organization, meaning that it was not affiliated with a national labor organization. (Declaration of John C. Dempsey, General Counsel for AFSCME (hereinafter ("Dempsey Decl.") (filing 48-4), ¶ 7.) The July 14, 1987 Affiliation Agreement with AFSCME provided that " all of the assets, real and personal, tangible and intangible of NAPE at the time of the execution of the Agreement, including, but not limited to, pension and benefit funds, including the appreciation of existing property and any accretions, additions or accumulations are the sole property of NAPE, shall remain the property of NAPE in perpetuity.... The funds and property of NAPE remain under the direction and control of the properly constituted officers, agents, and employees of NAPE in accordance with NAPE's governing documents." (Affiliation Agreement (Abel Aff., Appx. A (filing 50); Dempsey Decl., Ex. A (filing 48-5)), Article III.)

AFSCME is a three-tiered labor organization which is affiliated with the AFL-CIO. It consists of an international union, some 3,500 local unions, and 50 to 60 regional councils. Through its affiliated locals and councils AFSCME has a membership of approximately 1.5 million workers across the country, nearly all of whom work for state and local governments. NAPE is one of the 3,500 local unions

-12-

and exists for the purpose of representing state and local government workers in Nebraska . (Dempsey Decl., ¶ 3.)

AFSCME is headquartered in Washington, D.C. The international union employs more than 450 persons. (*Id.*, ¶ 4.) AFSCME maintains field offices in several states; however, it has never maintained offices in the State of Nebraska. (*Id.*, ¶ 6.)

Under the provisions and interpretations of the AFSCME Constitution, all affiliated local unions (such as NAPE) are chartered as separate, autonomous labor organizations. NAPE and other affiliated local unions elect their own officers, hire and fire their own staff, negotiate the terms of collective bargaining agreements with their staff and/or employer representatives, establish their own policies, maintain their own bank accounts and file their own reports with governmental agencies, including the Internal Revenue Service and the Department of Labor. (*Id.*, ¶ 8.)

The July 14, 1987 Affiliation Agreement between NAPE and AFSCME reiterates NAPE's independence over the conduct of its own affairs in a specific provision entitled "Article IV- Preservation of NAPE's Autonomy." (*Id.*, ¶ 9) This provision states in relevant part:

> As an AFSCME affiliate, and consistent with the guarantees set forth it the AFSCME Constitution, NAPE shall retain its identity and shall have full autonomy in the conduct of NAPE business and affairs without intervention or interference from AFSCME. NAPE's autonomy shall include, but is not limited to, the right to establish its own dues structure, select its own staff, including attorneys and accountants, elect its own officers, set its own policies, vote on items of concern to it, and conduct its own affairs. In addition, NAPE shall retain the right to make its own decisions regarding contract demands and negotiations, including joining coalitions for bargaining purposes, engaging in political activity on behalf of its members, and publishing and

-13-

distributing its own literature, all without the need of approval from AFSCME

(Affiliation Agreement, Article IV.)

In all aspects of their business affairs NAPE and AFSCME conduct themselves as separate entities. Through their governing documents – the AFSCME Constitution and the NAPE, Local 61 Bylaws – each organization delegates authority to carry out its day-today matters, including labor relations matters, to specific elected or appointed individuals. (Dempsey Decl., ¶ 10.) Article V, Section 1 of the AFSCME Constitution gives the International President the authority to oversee the international union's day-to-day affairs, including authority to hire its staff. (*Id.*, ¶ 11.) Specifically this provision states in relevant part:

> The International President shall be the chief executive and administrative officer of the Federation, and shall conduct the affairs of the Federation in accordance with this Constitution and in accordance with policy decisions of the Convention and the International Executive Board. The International President shall, with the approval of the International Executive Board, procure suitable offices for the transaction of Federation business. The International President shall, under policies established by the International Executive Board, employ, terminate, fix the compensation and expenses, and direct the activities of such office staff, administrative assistants, technical and professional assistants, field staff, organizers and representatives as are required to carry out effectively the functions of the International President's office. The International President shall, with the approval of the International Executive Board, engage such technical and professional services, including legal counsel, as may be required.

(Dempsey Decl., Ex. B (filing 48-6).)  In contrast, the authority to establish policies and conduct the day-to-day affairs of NAPE is given to NAPE's elected Board of Directors under Article V of the NAPE Bylaws and to its appointed Executive

Director under Article VI. (Dempsey Decl., ¶ 12.) In relevant part, these provisions state:

> Powers and Duties of the Board: The board of directors shall supervise and direct the affairs of the union, based on policies and resolutions determined by the delegate assembly, shall interpret policies or changes therein within the limits of the bylaws, shall actively prosecute its purpose and shall determine the budget and oversee the disbursement of funds. It may adopt such rules and regulations for the conduct of its business as shall be deemed advisable, and may, in the execution of the powers granted, appoint such agents as it may consider necessary.

> Executive Director: The administration and management of the union shall be handled by an executive director, employed by and directly responsible to board of directors. The executive director shall receive direction from the board of directors through the chairman of the union, and be responsible for the day to day implementation of policies as determined by the board; shall have and exercise supervision and direction over all staff and persons employed or retained by the union and shall with the approval of the board of directors make adjustments necessary for the satisfactory completion of assignments and duties as may be assigned.

(Dempsey Decl., Ex. C (filing 48-7).)  In carrying out their day-to-day activities, including labor relation functions, AFSCME International and NAPE do not consult with, seek approval from or inform the other of their actions. (Dempsey Decl. ¶ 13.)

As part of their affiliated relationship, NAPE and AFSCME have agreed under the terms of the Affiliation Agreement and the AFSCME Constitution that AFSCME may impose an administratorship upon NAPE under certain conditions. An administratorship is a procedure whereby AFSCME appoints a person, known as the "administrator," to act on behalf of the affiliated local union and to temporarily assume charge of its affairs and business, including supervision of its employees. An

-15-

administratorship can be voluntary (*i.e.*, imposed at the request of the leadership of the local union because of financial hardship or declining membership), or involuntarily (*i.e.*, imposed by the President of AFSCME because of corruption or mismanagement at the local union).  (Dempsey Decl., ¶ 14.) On October 3, 2001, AFSCME, acting at the request of the NAPE Board of Directors, established a voluntary administratorship over NAPE.   The administratorship was lifted on October 15, 2003, at which time the members of NAPE elected and installed new officers to take full control of the NAPE's affairs. During this period the administrator, acting in his capacity as a representative of NAPE, controlled the local's the day-to-day affairs. (*Id.*, ¶ 15.)

Nugara was employed by NAPE before and throughout the period of the administratorship. Both before and during the period the administratorship, Nugara was represented in his employment with NAPE by the NAPE-AFSCME Staff Union (NASU).  (*Id.*, ¶ 16.)  The NASU is the sole and exclusive collective bargaining agent for all permanent employees of NAPE except for the Executive Director and Office Manager.  (Abel Aff., ¶ 21.)  The terms and conditions of Nugara's employment were governed by a collective bargaining agreement negotiated and executed by representatives of NASU and NAPE.   AFSCME was not a party to that agreement. (Dempsey Decl., ¶ 16.)  In particular, Nugara's layoff was governed by Section 18 of the NASU contract (Abel Aff. ¶ 24), which provides in part:

> Employees will be designated as either support staff or field staff. When a layoff is determined to be necessary, such layoffs will be made from either support staff or field staff which may either be the position of Contract Negotiator/Lead Negotiator or Organizer, and will be based on seniority. Any time a layoff is deemed necessary, a recommendation will be made by the Executive Director and approved by the Board of Directors prior to implementation.

-16-

(Abel Aff., Appx. B (filing 51), § 18.1.)  Mike Marvin, who served as NAPE's Executive Director at the time of Nugara's layoff, has never been employed by AFSCME. (Dempsey Decl., ¶ 4.)

While NAPE was under administratorship, Nugara filed a complaint against the local union in the United States District Court for the District of Nebraska alleging violations of the Fair Labor Standards Act and a separate action against NAPE's worker's compensation carrier, General Casualty Insurance, Co. Approximately one year after the FLSA action was filed, Nugara amended the complaint to add AFSCME as a party. (Dempsey Decl. ¶ 17.) In April 2005, Nugara, NAPE, General Casualty Insurance Co., and AFSCME entered into a "Confidential Settlement Agreement, Waiver and Release" resolving the FLSA claims against both NAPE and AFSCME. (*Id.*, ¶18.)  The settlement agreement provided, among other things, that:

> In full satisfaction of Nugara's claims made in the federal lawsuit, NAPE agrees to return Nugara to work as an organizer. The job requirements of Nugara's organizer position will not require him to work more than 40 hours per week. Nugara will be employed at an annual salary of $38,000 per year, with periodic adjustments as provided for in the collective bargaining agreement currently governing the relationship between NAPE and the NAPE/AFSCME Staff Union, or – in the event that the currently governing agreement is replaced with a successor agreement – in any successor agreement between NAPE and NASU (hereinafter collectively the "NASU bargaining agreement"). To the extent that such benefits are provided for in the NASU bargaining agreement, NAPE shall provide Nugara with health insurance, an automobile allowance, automobile insurance, and reimbursement for travel expenses, mileage, and cellular telephone expenses. Nugara shall also be entitled to sick leave and vacation leave that he would have accrued under the NASU bargaining agreement during the time he was off of work on workers' compensation leave. As provided in the NASU bargaining agreement, Nugara shall only be terminated for just cause.

(Dempsey Decl., Ex. C, ¶ 1.)

-17-

NAPE, as an affiliate of AFSCME, has all the rights, benefits and privileges of membership in AFSCME and every NAPE member has all rights of membership afforded by AFSCME. (Abel Aff., ¶ 15.)  To the extent approved by and at the sole discretion of NAPE, all full-time employees of NAPE are eligible for enrollment in the AFSCME health, hospital, and dental plans. NAPE retains the sole discretion to participate in any or all of said plans and programs. (*Id.*, ¶ 16.).  NAPE is responsible for the cost of all group health care plan premium payments on behalf of its employees.  (Declaration of Charles Jurgonis (filing <u>67-1</u>), ¶ 7.) Pursuant to the Affiliation Agreement, NAPE has assumed the rights and responsibilities of an AFSCME local union to include the payment each month of a basic minimum per capita tax to AFSCME in accordance with the International Constitution of AFSCME; NAPE is not obligated to pay additional fees or assessment of any sort to AFSCME. (Abel Aff., ¶ 17.)

### B.  Analysis of Baker Factors

"Interrelation of operations" is the first *Baker* factor to consider in determining whether NAPE and AFSCME constitute a single employer for purposes of satisfying the ADEA's and the ADA's employee-numerosity requirements.  The evidence shows that NAPE has full autonomy in the conduct of its business and affairs without intervention or interference from AFSCME. This includes, but is not limited to, the right to establish its own dues structure, select its own staff, including attorneys and accountants, elect its own officers, set its own policies, and vote on items of concern to NAPE. In addition, NAPE has the right to make its own decisions regarding contract demands and negotiations, including joining coalitions for bargaining purposes, engaging in political activity on behalf of its members, and publishing and distributing its own literature, all without the need of approval from AFSCME.

Nugara states in an affidavit that he "applied for a position with the Defendants and was denied as evidenced by Exhibit 'D' which is attached hereto and made a part

hereof. Affiant states that Exhibit 'D' clearly shows that Defendant Nape is Local 61 of AFSCME." (Nugara Aff. (filing 60), ¶ 4.)  The attached Exhibit D is a letter dated March 31, 2009, signed by "Julie Dake Abel, Associate Director, NAPE/AFSCME Local 61, AFL-CIO," advising Nugara that a Contract Administrator/Lead Negotiator position he applied for had been offered to and accepted by another candidate. (Nugara Aff., Ex. D (filing 60 at 9).)  The correspondence was written on letterhead paper containing a logo consisting of an outline of the State of Nebraska, divided by a lightening bolt, with "NAPE" printed on one side of the bolt and "Local 61" and "AFSCME" printed on the other.  (*Id.*)  Neither the signature block nor the letterhead in Nugara's Exhibit D are inconsistent with the defendants' evidence showing that NAPE is merely affiliated with AFSCME (which, in turn, is affiliated with the AFL-CIO).  There is no showing by Nugara that the sought-after Contract Administrator/ Lead Negotiator position involved working for AFSCME.

Nugara states that he was "told by Mike Marvin to go to Iowa on or about November 2007 to campaign door to door for Hilary Clinton because AFSCME was backing Hilary Clinton and needed people to go [to] Iowa." (Nugara Aff., ¶ 6.) Nugara "denied [sic] to do so because he is a registered Republican."  (*Id.*)  In addition, Nugara states that "he was asked by Mike Marvin to campaign in Pittsburgh for Hilary Clinton again because AFSCME wanted workers in Pennsylvania." (*Id.*) Nugara "refused to go again because he was a registered Republican."  (*Id.*)  After being hired Nugara "was sent to the George Meaney Institute for Arbitration training."  (*Id.*)  "[S]ometime between 1997 and 1999 [Nugara] took several Correctional Officers to an AFSCME Corrections United in Austin, Texas[, ... and] on or about October or November of 1999 ... [he took a group] to AFSCME Corrections United in Minneapolis, Minnesota. [Nugara] states that these were AFSCME programs for AFSCME correctional members and staff."  (*Id.*)  This evidence does not show that Nugara's employment duties included political campaigning on behalf of AFSCME,  nor does his attendance at training programs or

AFSCME-sponsored conferences raise any "red flags" suggesting that he was employed by the international union.

The second *Baker* factor is "common management." The evidence shows that as an autonomous affiliate of AFSCME, NAPE elects its own officers, adopts its own policies, holds its own meetings, and maintains its own offices. NAPE's Board of Directors supervises and directs the general affairs of the local union and day-to-day management is through its Executive Director. In comparison, the day-to-day affairs of AFSCME are managed through its International President. Although a voluntary administratorship over NAPE was imposed by AFSCME between October 3, 2001, and October 15, 2003, Nugara's layoff did not occur until October 2, 2008.

The third *Baker* factor is "centralized control of labor relations." The evidence shows that NAPE controlled all aspects of its employee labor relations at all times relevant to Nugara's claims. NAPE's right to manage its own labor relations issues is reflected in its bylaws which states the Executive Director "shall have and exercise supervision and direction over all staff and persons employed or retained by the union." The terms and conditions of Nugara's employment were governed by a collective bargaining agreement between NAPE and NASU, an agreement to which AFSCME was not a party. The evidence further shows that the decision to lay off Nugara was made by NAPE's Executive Director.

Nugara states in his affidavit that "sometime around 2002 he hurt his back and was off work ... [and] after he was well enough to work was refused employment by the defendants. Affiant had both a Worker [sic] Compensation Claims [sic] and a claim for back wages." (Nugara Aff., ¶ 7.) Nugara further states that he "filed a Federal lawsuit which can be found at 4:03cv-3223, a copy of said compliant being Exhibit 'F' which is attached hereto and made a part hereof. In paragraph 4 of Exhibit 'F' the affiant claimed that the defendants were his employer. The defendants filed an Answer a copy of which is attached hereto as Exhibit 'G' and made apart hereof.

-20-

The defendants admitted to being Affiant's employer." (*Id.*) The attached exhibits do not support Nugara's claim that NAPE and AFSCME admitted to being his employer.

Exhibit F attached Nugara's affidavit is a copy of the original complaint filed on June 12, 2003, in Case No. 4:03CV3223.[4]   The caption of such complaint named two defendants, "THE NEBRASKA ASSOCIATION OF PUBLIC EMPLOYEES a/k/a NAPE, State of Nebraska Nonprofit Corporation, and AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES LOCAL 61 a/k/a AFSCME, a Nebraska Nonprofit Corporation." (Nugara Aff., Ex. F (filing 60 at 11).) Nugara alleged that he "was a resident of Lincoln, Lancaster County, Nebraska during his course of employment with the NAPE/ AFSCME ('Defendant')." (*Id.* (filing 60 at 12), ¶ 3.) NAPE answered the complaint on August 4, 2003, and admitted this allegation. (Nugara Aff., Ex. G (filing 60 at 16), ¶ 3.)

On June 24, 2004, in conjunction with ruling on cross-motions for summary judgment, I addressed a question concerning the identity of the defendant(s) and held that Nugara's action had only been brought against NAPE. I explained:

> Although the plaintiff takes the position that there are two defendants, i.e., the Nebraska Association of Public Employees ("NAPE") and the American Federation of State, County, and Municipal Employees ("AFSCME"), and earlier attempted to obtain a clerk's entry of default against AFSCME, I find that NAPE (also known as AFSCME Local 61) is the sole defendant. Although the caption of the complaint identifies NAPE and AFSCME Local 61 as defendants, the body of the complaint states that "Defendant is a Nebraska nonprofit corporation."

---

[4] I take judicial notice of the complete court file in Case No. 4:03CV3223, a case which was also assigned to me. *See United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981) (district court may take judicial notice, whether requested or not, of its own records and files, and facts which are part of its public records; judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it).

(Filing 1, ¶ 4.) The evidence also reflects that NAPE and AFSCME
Local 61 are but a single entity. The international union, AFSCME, has
not properly been served with process, nor has an appearance been
entered directly on its behalf. Captions in all future filings therefore
should conform to the caption used in this memorandum and order, and
I will direct the clerk to modify the docket sheet in the same manner [to
list only one defendant: 'Nebraska Association of Public Employees,
American Federation of State, County, and Municipal Employees Local
61'].

(Filing 57 in Case No. 4:03CV3223, at 2 (footnote omitted).)

Nugara thereafter was granted leave to file an amended complaint adding
AFSCME as a party. Nugara alleged in the amended complaint that he "was a resident
of Lincoln, Lancaster County, Nebraska during his course of employment with NAPE
and AFSCME, (hereinafter 'Defendants')."  (Filing 77 in Case No. 4:03CV3223, ¶
3.)  NAPE responded to this allegation by stating: "Admitted, except that it is
expressly denied that AFSCME was an employer of Plaintiff."  (Filing 78 in Case No.
4:03CV3223, ¶ 3.)  Similarly, for its answer AFSCME admitted that Nugara "was a
resident of Lincoln, Lancaster County, Nebraska during his course of employment
with the NAPE" but denied all remaining allegations in paragraph 3. (Filing 79 in
Case No. 4:03CV3223, ¶ 3.)  Nugara also alleged in his amended complaint that
NAPE and AFSCME were joint employers for FLSA purposes.  (Filing 77 in Case
No. 4:03CV3223, ¶¶ 4, 5.)  NAPE and AFSCME both denied these "joint employer"
allegations. (Filing 78 in Case No. 4:03CV3223, ¶¶ 4, 5; Filing 79 in Case No.
4:03CV3223, ¶¶ 4, 5.)

Finally, I must consider whether there is "common ownership or financial
control" between NAPE and AFSCME.  The evidence shows that since its affiliation
with AFSCME in July 1987, NAPE has retained full direction and control over all of
its funds and property, including pension and benefit funds.  NAPE maintains its own

bank accounts and files its own reports with governmental agencies, including the Internal Revenue Service and the Department of Labor.

In his affidavit Nugara "claims that while employed for the Defendants he received Health Insurance from AFSCME as evidenced by Exhibit 'E' which is attached hereto and made a part hereof." (Nugara Aff., ¶ 5.) [5] Exhibit E is a letter from the Financial Services, Benefits Department of AFSCME, dated April 6, 2010, which advised Nugara of the total amount it had received during 2009 for his health care premiums. (Nugara Aff., Ex. E (filing 60 at 10).) It is undisputed that all full-time employees of NAPE are eligible for enrollment in the AFSCME health, hospital, and dental plans. However, NAPE retains the sole discretion to participate in any or all of said plans and programs and is responsible for the cost of all group health care plan premium payments on behalf of its employees.

I conclude there is not sufficient evidence to support a finding that NAPE and AFSCME are a single employer, or that they jointly employed Nugara. Rather, the evidence conclusively shows that Nugara was employed solely by NAPE, which is a local union affiliated with AFSCME, and that NAPE does not have the requisite minimum number of employees to be subject to the ADEA or the ADA. Accordingly, I will grant NAPE's motion for partial summary judgment and will dismiss with prejudice counts 1 and 2 of Nugara's complaint as alleged against NAPE.

---

[5] Nugara "further states that it is his understanding based on information he has heard from another NAPE/AFSCME employee, Ted Buri that he was eligible for enrollment in the AFSCME retirement program, through affiant never did participate in said program." (Nugara Aff., ¶ 5.) This hearsay statement will not be considered. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) (noting that inadmissible hearsay evidence cannot be used to defeat summary judgment).

### 3.  AFSCME's Alternative Motion for Summary Judgment

I have previously determined that Nugara failed to state a claim upon which relief can be granted against AFSCME under the ADEA and the ADA merely by alleging that NAPE is a subsidiary of AFSCME.  Now, for the reasons discussed above in connection with NAPE's motion, I will also grant AFSCME's alternative motion for summary judgment to the extent that AFSCME seeks dismissal of the ADEA and ADA claims against it for Nugara's inability to meet his burden of proof regarding the employee-numerosity requirements of the Acts.  I do not reach any other issues presented by the alternative motion for summary judgment.

### 4.  Supplemental Jurisdiction

When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually "will point toward declining to exercise jurisdiction over the remaining state law claims."  *In re Canadian Import Antitrust Litigation*, 470 F.3d 785, 792 (8th Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  *See also Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, . . ..").  Indeed, the Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible."  *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.1990)).  "[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . .."  *Id.* at 419-20 (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir.1999)).

Although Nugara's breach-of-contract claim concerns a settlement agreement that was entered into in connection with a prior action in this court, the settlement agreement was not presented to the court for approval and the alleged breach is not related to the issues raised in the prior action.  It is only claimed that the defendants breached a promise in the settlement agreement that "[a]s provided in the NASU bargaining agreement, Nugara shall only be terminated for just cause." As requested by NAPE, therefore, I will decline to exercise supplemental jurisdiction over this state-law claim for breach of contract and will dismiss the action without prejudice.

IT IS ORDERED:

1.    Filing 48, Defendant AFSCME's motion to dismiss, or, alternatively, motion for summary judgment, is denied in part and granted in part, as follows:

    a.    The motion is denied to the extent Defendant requests reconsideration under former Nebraska Civil Rule 60.1 of the court's order that was entered on November 23, 2010 (filing 34);

    b.    The motion is denied to the extent Defendant requests dismissal of Plaintiff's action pursuant to Federal Rules of Civil Procedure 4(m) or 12(b)(5), for failure to obtain timely service of process;

    c.    The motion is granted pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to count 1 (ADEA claim) and count 2 (ADA claim) of Plaintiff's complaint, for failure to state a claim upon which relief can be granted, and counts 1 and 2 are dismissed with prejudice as against said Defendant;

    d.    Alternatively, the motion is granted pursuant to Federal Rule of Civil Procedure 56 with respect to counts 1 and 2 of Plaintiff's complaint, which are dismissed with prejudice as against said Defendant; and

    e.    In all other respects, the motion is denied without prejudice.

-25-

2.      Filing 47, Defendant NAPE's motion for partial summary judgment, is granted, and counts 1 and 2 of Plaintiff's complaint are dismissed with prejudice as against said Defendant.

3.      Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over count 3 (breach-of-contract claim) of Plaintiff's complaint, and the action is dismissed without prejudice.

4.      Judgment shall be entered by separate document.

July 8, 2011.               BY THE COURT:

                                        *Richard G. Kopf*
                                        United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.